## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**MARTIN TORRES-RIVERA,**

**Plaintiff,**

**v.**                                                      CIVIL NO. 13-1747 (GAG)

**CENTRO MEDICO DEL TURABO INC.,**
**et al.,**

**Defendants.**

## OPINION AND ORDER

Mr. Martin Torres-Rivera ("Plaintiff") brings suit against Defendants Dr. Luis A. Aponte ("Dr. Aponte") and Centro Medico Del Turabo Inc. d/b/a San Pablo HIMA–Caguas ("HIMA"). Plaintiff alleges the malpractice of Dr. Aponte and HIMA violated Articles 1802 and 1803 of Puerto Rico's Civil Code, P.R. LAWS ANN. tit. 31, §§ 5141-5142.  (Docket No. 59 at 15-17.) Plaintiff also alleges Defendant HIMA violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.  Id. at 13-14.

Defendants' three motions in limine are before the Court.  (Docket Nos. 136; 137; 138.) HIMA moves to (i) exclude any reference to EMTALA violations; (ii) exclude testimony of Plaintiff's treating physician, Dr. Pranay Ramdev ("Dr. Ramdev"); (iii) exclude evidence concerning the corporate responsibility doctrine and principal-agent relationship; and (iv) exclude any reference to hospital staff direct liability.  (See Docket No. 136).  In addition, Dr. Aponte moves to (i) limit the testimony of Dr. Ramdev and (ii) exclude the testimony of Dr. Ralph De Natale ("Dr. De Natale").  (Docket Nos. 137; 138.)  Plaintiff opposes these motions.  (Docket Nos. 139; 140).

Civil No. 13-1747 (GAG)

After reviewing the submissions and applicable law, the Court hereby **DENIES** HIMA's motion in limine at Docket No. 136; **DENIES** Dr. Aponte's motion in limine at Docket No. 137; and **DENIES** Dr. Aponte's motion in limine at Docket No. 138.

## I.    Background

The Court briefly summarizes the uncontested facts as started by the parties in their Amended Proposed Pretrial Order.  (See Docket No. 124, at 20-22.)  On September 26, 2012, Plaintiff had a medical visit with Dr. Aponte.  Dr. Aponte performed an examination of Plaintiff's lower back area and ordered a CT scan, which revealed an abdominal aortic aneurysm.  As a result, Dr. Aponte scheduled Plaintiff's admission to HIMA for surgery.  On October 11, 2012, Dr. Aponte performed surgery on Plaintiff's abdominal aorta.  The next day, Plaintiff complained of pain radiating from his right hip to right foot.  Plaintiff consulted with a neurologist, who ordered an MRI of Plaintiff's lower back area.  On October 22, 2012, Plaintiff was discharged from HIMA and sent to physical therapy.

Approximately one month later, Plaintiff returned to the HIMA emergency room with an abdominal wound infection.  On November 24, 2012, Dr. Aponte saw Plaintiff at HIMA.  On November 30, 2012, Plaintiff is discharged from HIMA.  A week later, on December 5, 2012, Plaintiff returned to the HIMA emergency room.  On December 11, 2012, Dr. Aponte performed a second surgery (aortobifemoral bypass) on Plaintiff.  Following the second surgery, Plaintiff was discharged from HIMA on December 23, 2012.

A month later, Plaintiff returned to HIMA's emergency room.  This time, he received a CT scan of his brain.  On February 6, 2013, Plaintiff had a follow-up appointment with Dr. Aponte.

Plaintiff then moved to Florida.  On May 17, 2013, Plaintiff saw Dr. Ramdev for the first time.  On July 19, 2013, Dr. Ramdev performed a right leg amputation below Plaintiff's knee.

Civil No. 13-1747 (GAG)

## II.    Discussion

For the sake of clarity, the Court addresses Defendants' motions by witness, not docket number.  Defendants raise two core arguments.  First, Defendants seek to exclude or limit the testimony of Plaintiff's treating physician, Dr. Ramdev, based on Plaintiff's alleged failure to satisfy expert disclosure requirements of Rule 26 of the Federal Rules of Civil Procedure.  (Docket Nos. 136, ¶¶ 19-25; 137.)  Second, Defendants assert various reasons to exclude the testimony of Plaintiff's expert witness, Dr. De Natale.  HIMA argues Dr. De Natale's expert testimony, and any other evidence of an EMTALA violation, should be excluded for lack of notice.  (Docket No. 136, ¶¶ 3-18.)  Dr. Aponte argues Dr. De Natale's expert testimony, as it relates to Plaintiff's medical malpractice claim, should be excluded as lacking sufficient reliability under Daubert v Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  (Docket No. 138.)  These arguments are addressed in turn.

### A.   Plaintiff's Treating Physician

HIMA and Dr. Aponte move to exclude or limit the testimony of Plaintiff's treating physician, Dr. Ramdev, for failure comply with expert disclosure requirements during discovery.  (Docket Nos. 136, ¶¶ 19-25; 137.)  HIMA believes the lack of expert disclosures justifies the complete exclusion of Dr. Ramdev as a witness.  (Docket No. 136, ¶ 25.)  Dr. Aponte, on the other hand, believes Dr. Ramdev's testimony should be limited to issues of fact, not expert opinion.  (Docket No. 137, at 10-12.)  Both arguments fail.

Rule 26 of the Federal Rules of Civil Procedure facilities pretrial discovery by placing an affirmative duty on litigants to provide, in advance of trial, the name "of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses."  FED. R. CIV. P. 26(a)(1)(A).  Rule 26 imposes further requirements for any "witness

3

Civil No. 13-1747 (GAG)

who is retained or specifically employed to provide expert testimony in the case" by way of an expert report.  FED. R. CIV. P. 26(a)(2)(B).  This requirement applies to persons testifying "under Rule 702 of the Federal Rules of Evidence with respect to scientific technical, and other specialized matters."  FED R. CIV. P. 26(a)(2).  However, "[t]hat definition does not encompass a percipient witness who happens to be an expert."  Gomez v. Rivera Rodriguez, 344 F.3d 103, 113 (1st Cir. 2003).

The advisory committee guidelines provide further guidance.  "A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."  FED. R. CIV. P. 26(a)(2) advisory committee's note to 1993 amendment.  The First Circuit has followed the advisory committee's example, holding that treating physicians provide testimony as fact, not expert, witnesses.  Gomez, 334 F.3d at 113.  "This is because 'the triggering mechanism for [the] application of Rule 26's expert witness requirements is not the status of the witness, but, rather, the essence of the proffered testimony.'"  Ramos-Rios v. United States, No. 12-1985 (GAG), 2014 WL 6612508, at *2 (D.P.R. Nov. 18, 2014) (quoting Gomez, 334 F.3d at 113).

This rule squarely applies to Plaintiff's treating physician, Dr. Ramdev.  Dr. Ramdev treated Plaintiff in May 2013 and performed a right leg amputation procedure in July 2013.  (Docket No. 124 at 17.)  Dr. Ramdev will "provide testimony arising from [his] role" as an actor in the events giving rise to litigation, and is therefore appropriately viewed as a fact witness not subject to Rule 26's requirements for expert witnesses.  See Talavera v. Municipality of San Sebastian, 865 F. Supp. 2d 150, 153 (D.P.R. 2011).

Relevant evidence is generally admissible, unless excluded by a specific rule.  FED. R. EVID. 402.  A trial court should not exclude relevant evidence unless its probative value is substantially outweighed by the danger of unfair prejudice.  FED R. EVID. 403.  Under Puerto

4

**Civil No. 13-1747 (GAG)**

Rico's general tort statute, the three elements of a medical malpractice claim are (1) the duty owed, i.e. the minimum standard of professional knowledge and skill under the circumstances; (2) an act or omission in breach of that duty; and (3) a sufficient causal nexus between the breach and the harm claimed.  Cortes-Irizarry v. Corporacion Insular De Seguros, 111 F.3d 184, 189 (1st Cir. 1997).  At minimum, Dr. Ramdev's testimony is directly relevant to establish the causal nexus between Plaintiff's prior treatment and Plaintiff's alleged injury.

Dr. Ramdev's testimony may draw on his professional background and specialized knowledge.  Such testimony is relevant to Dr. Ramdev's understanding of Plaintiff's injuries.  This will not unfairly prejudice Defendants.  Plaintiff disclosed Dr. Ramdev as a treating physician in their initial disclosures, interrogatory answers, and in the Amended Pretrial Order.  (Docket No. 139, ¶ 3.5.)  Defendants had the opportunity to depose Dr. Ramdev.  If Defendants had wanted to discover further information from Plaintiff's treating physician in advance of trial, they would have deposed him.  They did not.

Therefore, the Court **DENIES** HIMA's motion in limine to exclude Dr. Ramdev's testimony (Docket No. 136, ¶¶ 3-18) and **DENIES** Dr. Aponte's motion in limine to limit Dr. Ramdev's testimony.  (Docket No. 137.)

### B. Plaintiff's Expert Witness

Both Defendants seek to exclude the testimony of Plaintiff's expert witness, Dr. De Natale, albeit for different reasons.  HIMA argues the expert testimony was not properly noticed, and should therefore be excluded as to Plaintiff's EMTALA claim.  (Docket No. 136, ¶¶ 19-25.)  Dr. Aponte argues the expert testimony does not satisfy the reliability requirements set established by Daubert v. Merrell Dow, and should therefore be excluded as to Plaintiff's medical malpractice claim.  (Docket No. 138.)

Civil No. 13-1747 (GAG)

###### i.   *HIMA's Argument at Docket No. 136.*

HIMA's request to exclude the testimony of Dr. De Natale—along with all other evidence relating to an EMTALA violation—takes essentially two forms: one broad and one narrow. (Docket No. 136, ¶¶ 3, 4, 15, 17.)  Broadly, HIMA seeks to exclude *any* evidence of an EMTALA violation on the grounds that Plaintiff failed to produce such evidence in discovery.  (Docket No. 136, ¶ 17.)  Substantively, this conclusory argument is not supported by the record.  Procedurally, summary judgment is the proper tool for a party alleging no genuine dispute as to any material fact.  FED R. CIV. P. 56(a).  In this case, the dispositive motion deadline lapsed on October 1, 2015. (Docket No. 101.)  HIMA did not file a dispositive motion.  A motion in limine is not the appropriate tool to move for judgment on a particular claim.  See 21 Charles A. Wright & Kenneth W. Graham, Fed. Prac. & Proc. § 5037.18 (2d ed.) (noting that "preexisting caselaw provides ammunition against those who would use the motion in limine as a substitute for a motion for summary judgment").

More narrowly, HIMA seeks to exclude Dr. De Natale's testimony regarding any EMTALA violation for insufficient notice under Rule 26 of the Federal Rules of Civil Procedure. (Docket No. 136, ¶ 3, 4, 15.)  Yet, as HIMA notes, Dr. De Natale produced an expert witness report dated December 24, 2013 and was deposed on November 20, 2014.  Id. at ¶ 3.  Further, the Court notes that a trial date has not yet been scheduled. Clearly, HIMA has received sufficient notice to prepare for Dr. De Natale's trial testimony.

Dr. De Natale's testimony is relevant to Plaintiff's EMTALA claim against HIMA. EMTALA imposes a duty on covered hospitals to (a) provide screening for emergency medical conditions and (b) provide further examinations necessary to stabilize certain medical conditions. 42 U.S.C. § 1395dd(a), (b)(1)(A); Alvarez-Torres v. Ryder Mem. Hosp., Inc., 582 F.3d 47, 51 (1st

Civil No. 13-1747 (GAG)

Cir. 2009).  Dr. De Natale testified at deposition that Plaintiff's reported right leg pain was "a medical emergency situation."  (Docket No. 136, ¶ 4.)  HIMA had the opportunity to further develop that testimony at deposition.  HIMA has not shown such surprise and unfair prejudice as to justify the exclusion of an expert witness of which HIMA has known for nearly *three years*. See Pagés-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109, 113 (1st Cir. 2010) (vacating the district court's exclusion of an expert, and finding no surprise or unfair prejudice to defendants who were provided with expert report *three months* in advance of trial) (emphasis added).

Therefore, the Court **DENIES** HIMA's motion in limine to exclude Dr. De Natale's testimony at Docket No. 136, ¶¶ 3-18.

> ii.  *Dr. Aponte's Argument at Docket No. 138.*

Dr. Aponte moves to exclude the testimony of Plaintiff's expert witness, Dr. De Natale, as lacking sufficient reliability because Dr. De Natale reviewed only a portion of Plaintiff's medical records.  (Docket No. 138, 9-12.)

Federal Rule of Evidence 702 governs the admission of expert testimony.  Rule 702 requires expert testimony be (1) "based on sufficient facts or data;" (2) "the product of reliable principles and methods;" and (3) that the witness apply "the principles and methods reliably" to the particular facts of the case.  FED R. EVID. 702.  The trial court serves a gatekeeping function to ensure the witness's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]"  Id.; Pagés-Ramirez, 605 F.3d at 113 (citing Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion Familiar, 345 F.3d 15, 24 (1st Cir. 2003).

Dr. Aponte does not challenge Dr. De Natale's qualifications as an expert in the field. Rather, Dr. Aponte argues the testimony reflects an unreliable methodology because Dr. De Natale only reviewed a portion of Plaintiff's medical records.  (Docket No. 138, at 9-12.)  Plaintiff

Civil No. 13-1747 (GAG)

responds that Dr. De Natale's decision to review a limited portion of the medical records was based on the narrow opportunity to reverse the paralysis in Plaintiff's right leg following the first surgery on October 11, 2012.  (Docket No. 139, at 12, 13.)

Dr. Aponte's argument raises questions relating to the persuasiveness and credibility of Dr. De Natale's expert opinion—that is, Dr. De Natale's decision to conduct a limited review of Plaintiff's medical records.  Questions of persuasiveness and credibility are properly reserved for the jury.  See Cruz-Vázquez v. Mennonite Gen. Hosp., Inc., 613 F.3d 54, 59-60 (1st Cir. 2010) (finding the district court abused its discretion in excluding a qualified expert witness as biased).

The issue Dr. Aponte presents for resolution by this Court is whether a qualified expert's review of a portion of Plaintiff's medical records will help the jury to determine any issue of fact in a medical malpractice claim.  The Court answers in the affirmative.  Dr. De Natale's testimony will help the jury to determine both the applicable professional standard of case and the causal nexus between the alleged breach and Plaintiff's injury.  Therefore, the Court **DENIES** Dr. Aponte's motion in limine to exclude Dr. De Natale's testimony at Docket No. 138.

C. Other Matters Raised by HIMA

HIMA moves to exclude evidence of corporate responsibility and the principal-agent relationship.  (Docket No. 136, ¶¶ 26-37.)  HIMA also moves to exclude any reference to hospital staff direct liability.  Id. at 38-40.  In response, Plaintiff reiterates that a motion in limine is not a vehicle for summary judgment in disguise.  (Docket No. 140.)

Plaintiff will be given an opportunity to prove his case at trial. That includes presenting evidence of the medical malpractice claim (as to Dr. Aponte and HIMA) and the EMTALA claim (as to only HIMA).  To the extent the doctrines of corporate responsibility or principal-agent relationship assist Plaintiff in proving the essential elements of medical malpractice or an

8

Civil No. 13-1747 (GAG)

EMTALA violation, such evidence is relevant and therefore admissible.  See, e.g., Pagés-Ramirez v. Hosp. Español Auxillo Mutuo De P.R., Inc., 547 F. Supp. 2d 141, 150-52 (D.P.R. 2008) (discussing hospital liability for physician malpractice under Puerto Rico law); Suárez Matos v. Ashford Presbyterian Cmty. Hosp., Inc., 4 F.3d 47, 52 (1st Cir. 1993) (Puerto Rico law holds hospitals responsible when a physician with admitting privileges who shares profits with the hospital commits malpractice).  Moreover, HIMA has not identified the specific evidence it seeks to exclude.  HIMA instead seeks to exclude theories of tort liability.  Therefore, HIMA's motion in limine to exclude on these grounds at Docket No. 136 is **DENIED.**

**III.    Conclusion**

For the reasons stated above, HIMA's motion in limine at Docket No. 136 is **DENIED**; Dr. Aponte's motion in limine at Docket No. 137 is **DENIED**; and Dr. Aponte's motion in limine at Docket No. 138 is **DENIED**.

In light of the Court's order, this case is hereby referred to Magistrate Judge Camille Vélez-Rivé for a final pretrial settlement conference.  Following the conference, this matter will be scheduled for trial.

**SO ORDERED.**

In San Juan, Puerto Rico, on this 19th day of October, 2016.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge